IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  04-30052 |
| ) | |
| WILLIAM A. GINGLEN, ) | |
| ) | |
| Defendant. ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter comes before the Court on Defendant's Motion for Reduction of Monthly Restitution Payment (d/e 47). For the reasons stated below, this Motion is denied.

BACKGROUND

Defendant William A. Ginglen (Ginglen) pleaded guilty on July 8, 2005, to seven counts of armed robbery, in violation of 18 U.S.C. § 2113(a) and (d), and two counts of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). In 2002 and 2003, Ginglen robbed a number of Central Illinois banks, making off with a total of $56,382. On December 29, 2005, the Court sentenced Ginglen to

concurrent 97 month terms on each of the seven robbery counts and 84 month and 300 month terms on the firearm counts. The Court also imposed a $56,382 restitution order, requiring that while in custody, Ginglen pay at least $250 a month from his monthly pension income to his victims. Additionally, the restitution order provides that while Ginglen is incarcerated, he must make quarterly installment payments of at least $25 if he is working in a non-UNICOR position and at least 50% of any monthly income he may earn if working in a UNICOR job. The Court also ordered that in the event Ginglen receives -- from any source other than his pension and employment income -- any property, money, or offer of value for anything in excess of $100, he must assign his interest in that property, money, or right to receive to the Clerk for the United States District Court for the Central District of Illinois, to apply toward restitution.

Ginglen believes the restitution order is unduly onerous and requests a three-month suspension and a reduction in subsequent payments to $100 a month. Pending resolution of his Motion, Ginglen apparently ceased paying his restitution fees; when the Government filed its Response, he was delinquent two months.

Ginglen states that each month he receives approximately $330 in

pension income and between $0 and $18 in prison employment income. He also does not contest the Government's report that while in prison, he has received regular deposits into his prison account of between $90 and $250 a month. Ginglen argues, however, that his restitution payments deprive him of the funds necessary for ordinary living expenses, such as telephone access, pens, typewriter ribbons, copies, envelopes, vitamins, life insurance, and morally obligatory contributions to assist his ex-wife in her legal obligation to pay a $3,000 debt to the IRS. Ginglen also asserts that his discretionary income is needed to pay a $350 filing fee for a 28 U.S.C. § 1983 action that he filed in 2006; he says he pays $64 toward this fee each month, which represents a material change in his economic circumstances.

Moreover, Ginglen reports that he lost his Social Security retirement income when he became incarcerated. He also states that from other inmates, he has learned that his attorney could have requested a stay of his payments pending the resolution of his appeal but did not and that similar individuals in similar circumstances are required to pay only $100 per month, if they are required to pay at all before completing their sentences. Moreover, Ginglen argues that even at $250 a month, he will not be able to

complete restitution until he turns 83, making full restitution unlikely.

Finally, Ginglen asserts that he should not be charged interest on his restitution amount. He contends that the Court did not order interest and should inform the Government that interest payments are unnecessary.

## ANALYSIS

District courts have only limited power to reconsider sentences after they have been imposed; they may revisit such sentences only when statutes or rules allow. United States v. Goode, 342 F.3d 741, 743 (7th Cir. 2003). Ginglen does not specify which avenue of relief he pursues, but most are closed to him. See, e.g., Fed. R. Crim. P. 35(a) (authorizing sentence corrections only within seven days of imposition); Fed. R. Crim. P. 36 (authorizing courts to correct clerical errors, but not substantive ones); 28 U.S.C. § 2255 (allowing inmates to challenge only their custody); 18 U.S.C. § 3572(d)(3) (applying only to fines, not restitution orders). One is potentially available, however, and the Court reads Ginglen's Motion as a request to modify his restitution judgment under 18 U.S.C. § 3664(k).

Nevertheless, Ginglen does not qualify for a modification under this statute. It states:

A restitution order shall provide that the defendant shall notify

the court and the Attorney General of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution. The court may also accept notification of a material change in the defendant's economic circumstances from the United States or from the victim. The Attorney General shall certify to the court that the victim or victims owed restitution by the defendant have been notified of the change in circumstances. Upon receipt of the notification, the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule or require immediate payment in full, as the interests of justice require.

18 U.S.C. § 3664(k). Only a material change in economic circumstances would allow this Court to modify Ginglen's restitution order.[1] The only change Ginglen points to is his obligation to pay a § 1983 filing fee. The Court knew of his other financial circumstances -- discretionary living expenses, the absence of any Social Security income, life insurance, the fact that he may be in his 80s before completing restitution, and his ex-wife's obligation to the IRS -- at sentencing. What other inmates are obligated to pay toward restitution is irrelevant. Moreover, had Ginglen's attorney moved for a stay pending appeal and the Court granted his motion, Ginglen still would have had to make the $250 monthly payments; the Court merely

---

[1] The Court notes that it has not received certification that the Attorney General notified Ginglen's victims of his alleged change in economic circumstances, which is a prerequisite to any adjustment of the payment schedule under this statute. See 18 U.S.C. § 3664(k). Because the Court has concluded that Ginglen would not qualify for a modification even with this procedural requirement satisfied, though, it will not order notification.

would have set the payments aside to be returned to Ginglen if his appeal had been successful or sent to his victims if his appeal failed. See Fed. R. Crim. P. 38(e)(2)(C) (allowing the court to stay a restitution order during appeal but require "the defendant to deposit all or part of any monetary restitution into the district court's registry."). He would not have had $250 more a month to spend on living expenses.

Thus, the Court could modify Ginglen's restitution order only if his filing fee represented a material change in economic circumstances, but it does not. Ginglen's ability to pay has not fundamentally changed from when the Court imposed its restitution order. Compare United States v. Bowles, 2003 WL 21396691, at *2 (S.D.N.Y. June 16, 2003) (holding that a defendant whose doctors placed him on "restrictive duty" because of substantial physical ailments was unable to work as the court had anticipated and thus suffered a material change). He chose to file a § 1983 action, and the Court set up a payment plan for the associated fee that he can afford on his pension income alone.

Ginglen's prison account records, however, demonstrate that his income is greater than his pension alone. It appears that Ginglen has been receiving periodic contributions to his prison account of between $90 and

6

$250.² Thus, he is receiving more than the $80 left over from his pension each month. The Court finds that his economic situation continues to allow him to make his restitution payments as ordered. In fact, he also can afford to pay an additional $50 a month in arrearage. See 18 U.S.C. § 3613A(a)(1) (authorizing courts to adjust the restitution payment schedule for defendants in default). Until Ginglen has made up the money he unilaterally decided to withhold, he will pay $300 a month in restitution.

Finally, the Court also rejects Ginglen's argument that he need not pay interest. Under 18 U.S.C. § 3612(f), unless the Court waives interest, a defendant must pay it on any restitution order of more than $2,500 that is not paid in full within 15 days of judgment. That requirement is mandatory. United States v. Higham, 2006 WL 3359430, at *2 (N.D. Ill. Nov. 16, 2006). The Court did not waive interest here, and Ginglen must pay it.

THEREFORE, Ginglen's Motion for Reduction of Monthly Restitution Payment (d/e 47) is DENIED, and he is ordered to pay $300 a month until he has made up the months he withheld his $250 payments;

---

²To the extent those additional contributions did not originate from his pension income, Ginglen owed anything over $100 to his victims.

once he has made up those payments, he may revert to $250 a month.

IT IS THEREFORE SO ORDERED.

ENTER:   October 2, 2007

>   FOR THE COURT:

>   >   s/ Jeanne E. Scott
>   >   JEANNE E. SCOTT
>   >   UNITED STATES DISTRICT JUDGE